**CLEARSTREAM WASTEWATER SYSTEMS, INC. and Jerry L. McKinney, Plaintiffs–Appellants,**

v.

**HYDRO–ACTION, INC. and T. Gig Drewery, Defendants–Appellees.**

**No. 99–1299.**

United States Court of Appeals, Federal Circuit.

March 27, 2000.

John R. Feather, of Houston, Texas, argued for plaintiffs-appellants. With him on the brief was Ernest Randall Smith, E. Randall Smith, P.C., of Houston, Texas.

John S. Egbert, Harrison & Egbert, of Houston, Texas, argued for defendants-appellees.

Before PLAGER, SCHALL, and GAJARSA, Circuit Judges.

PLAGER, Circuit Judge.

The United States District Court for the Southern District of Texas granted summary judgment of non-infringement of U.S. Patent No. 5,221,470 ("the '470 patent") against Clearstream Wastewater Systems, Inc. and Jerry L. McKinney (collectively "Clearstream"), and in favor of Hydro–Action, Inc. and T. Gig Drewery (collectively "Hydro–Action"). *See Clearstream Wastewater Sys., Inc. v. Hydro–Action, Inc.,* No. H–95–5233 (S.D.Tex. Feb.4, 1999). Clearstream appeals, arguing that the district court erred by limiting its construction of means-plus-function claim language to exclude from coverage a corresponding structure that was in the prior art. We agree that the district court erred in its claim construction and inappropriately granted summary judgment in favor of Hydro–Action. The judgment of the district court is therefore vacated, and the case is remanded for further proceedings.

## BACKGROUND

On June 22, 1993, the '470 patent was issued to Jerry L. McKinney. The patent covers a wastewater treatment apparatus utilizing aerobic (i.e., air breathing) bacteria to digest solid organic particles in wastewater. The '470 patent was subsequently subject to re-examination by the United States Patent and Trademark Office. In Re-examination Certificate No. B15,211,470, the PTO confirmed the patentability of claims 1–9 of the patent. Mr. McKinney licensed the '470 patent to Clearstream Wastewater Systems, Inc., a manufacturer of wastewater treatment plants used in homes and small business facilities.

In wastewater treatment plants that utilize aerobic bacteria to clean wastewater, air must be supplied to the bacteria for it to thrive. In the prior art, the aeration of the wastewater is accomplished by pumping air through rigid-conduits, such as PVC pipes. The pipes extend from the

top to the bottom of the tanks, where air is diffused through fine openings. Typically, wastewater treatment plants are buried underground with only a small opening in the top portions left unburied to allow access for cleaning and servicing. Because the prior art, rigid-conduits are generally located against the outside walls of aeration chambers, they are difficult to remove and replace because of smallness of the openings on the top portion of the plants.

Like the prior art, the wastewater treatment plant disclosed in the '470 patent provides air to an aeration chamber holding wastewater and bacteria. Figure 1 of the '470 patent, reproduced below, illustrates one embodiment of a treatment plant with an aeration chamber 20.

The '470 patent discloses a structure, including a flexible air hose inserted through rigid-conduits, that allows for ease in replacement and servicing of the air supply system in wastewater treatment plants. *See* '470 patent, col. 2, ln. 4–11 and 60–62. An embodiment of a rigid-conduit 32 in which a flexible-hose 38 is inserted is illustrated in Figure 3. In sum, one of the novel features described in the '470 patent is the insertion of flexible-hoses into the rigid-conduits.

Another novel feature disclosed in the patent is a new filtering system near the exit of the plant. Though not directly at issue in this appeal, the presence of this feature in the claims is of importance as shall be explained.

FIG.1

FIG.3

Clearstream sued Hydro–Action, a competitor in the field of wastewater treatment plants, for infringement of claims 1, 3, 4, and 7 of the '470 patent. Claims 1 and 4 are independent claims. Claim 3 is dependent upon claim 1, and claim 7 is dependent on claim 4. Claims 1 and 4 read as follows (emphasis added):

1. In a wastewater treatment plant having an aeration chamber, an inlet located adjacent the top of the aeration chamber through which the waste water

flows into the aeration chamber and downwardly toward the bottom of the aeration chamber, *means for injecting air into the waste water in the aeration chamber to support the growth of aerobic microorganisms* and a clarifier chamber within said aeration chamber, said clarifier chamber being formed by a partition in the form of an inverted, truncated cone-like member into the bottom of which the waster [sic] water flows from the aeration chamber and rises therein, *the improvement comprising a filter housing mounted in the clarifier* with an open lower end extending below the level of the waste water in the clarifier, a horizontal outlet tube connected to the filter housing through which the waste water can flow out of the filter housing and the clarifier, and a filter located in the housing below the level of waste water through which the waste water flows without turbulence to reach the outlet, said filter having a plurality of relatively narrow vertical passageways providing a large surface area for aerobic bacteria to cover and remove the small solid particles form [sic] the waste water as it flows upwardly through the filter toward the outlet, said means for injecting air in the aeration chamber also providing means to supply the aerobic bacteria covering the filter with sufficient oxygen to keep it functioning.

4. A waste water treatment plant comprising an aeration chamber and a clarification chamber within said aeration chamber, said clarifier chamber being formed by a partition in the form of an inverted, truncate cone-like member, an inlet at the upper end of the aeration chamber through which waste water can enter the chamber, *means for aerating the liquid in the aeration chamber to promote aerobic digestion of the organic solids in the waste water in the aeration chamber and the clarification chamber,* a passageway between the aeration chamber and the lower end of the clarification chamber to cause the waste water to flow upwardly in the clarification chamber without turbulence to allow large solid particles to fall downwardly through the upwardly moving waste water and reenter the aeration chamber, *a filter housing mounted in the upper end of the clarification chamber,* an outlet conduit connected at one end to the upper end of the filter housing with the other end extending laterally out of the clarification chamber through which the waste water can flow out of the clarification chamber as it rises in the clarification chamber and the filter housing, a filter in the filter housing through which all of the waste water flows to reach the outlet conduit, said filter having a plurality of elongated, narrow, vertical passageways to provide a large surface area for aerobic bacteria to cover so the bacteria will remove the small solid particles from the waste water as it flows upwardly through the passageways at a flow rate that will allow any large particles reaching the filter to fall downwardly to the bottom of the clarifier.

Hydro–Action's accused wastewater treatment system indisputably utilizes only the prior art, rigid-conduit system for supplying air into the aeration chamber. Hydro–Action filed a motion for summary judgment, contending that its wastewater treatment plants do not infringe the '470 patent because they lack the "means for injecting air" or "means for aerating" limitations required by the disputed claims of the '470 patent. According to Hydro–Action, the only possible corresponding structure for the "means for injecting air" or "means for aerating" limitations is the flexible-hose structure described in the patent, which is not part of the accused plant. Hydro–Action contended that since the means limitations require use of the flexible-hose structure, a treatment plant, like Hydro–Action's accused device, that uses only the prior art, rigid-conduit structure cannot infringe the patent.

Clearstream disputed Hydro–Action's interpretation of the disputed means clauses. It argued that the rigid-conduit struc-

ture utilized in the prior art and in the accused plant is a corresponding structure to the means-plus-function limitations or is a structural equivalent thereof.

After holding an evidentiary hearing, the district court granted Hydro–Action's motion for summary judgment of non-infringement. It adopted Hydro–Action's view that the only corresponding structure for the "means for injecting air" and the "means for aerating" limitations was the new and inventive flexible-hose system. A prior art structure, such as a rigid-conduit system, could not be corresponding structure despite the fact that the '470 patent discloses both the flexible-hose structure and the prior art, rigid-conduit structure as structures capable of injecting air into the wastewater in the aeration chamber. The district court reasoned that because the patent discloses the disadvantages of the prior art, rigid-conduit structure and reveals inventive features, such as the flexible-hose, that are meant to overcome those disadvantages, then the prior art structure could not be considered a supporting structure or its equivalent for purposes of 35 U.S.C. § 112, ¶ 6 (1994). Therefore, the district court concluded that because the '470 patent teaches away from the rigid-conduit structure of the prior art in favor of the flexible-hose configuration, Hydro–Action's accused plant, which uses the prior art structure, does not contain all the elements of claims 1, 3, 4, or 7, or their equivalents.

On appeal, Clearstream disputes the district court's claim construction, arguing that the corresponding structure in the written description for the "means for injection air" and "means for aerating" limitations includes the prior art, rigid-conduit system as well as the new flexible-hose system. Clearstream contends that the prosecution history supports such a reading of the means-plus-function language since the office actions and the responses to office actions for claims 1 and 4 clearly indicate that the point of novelty for those claims was the new filtering system, not the new flexible-hose aerating system. Thus, the means-plus-function language

could cover prior art rather than only an inventive structure disclosed in the patent. In addition, Clearstream contends that application of the doctrine of claim differentiation makes it clear that independent claims 1 and 4 are meant to cover more than just the new flexible-hose system because dependent claim 5 and independent claim 9 specifically claim the new flexible-hose system.

## DISCUSSION

■ In reviewing a district court's grant of summary judgment, we must make an independent determination as to whether the standards for summary judgment have been met. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994); *Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1560, 19 USPQ2d 1111, 1114 (Fed.Cir.1991); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673, 15 USPQ2d 1540, 1542–43 (Fed.Cir.1990). We view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985) (en banc). A motion for summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

■ An infringement analysis involves two steps. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc). First is claim construction – the scope and meaning of the patent claims asserted are determined. *See id.* Second is determination of infringement – the properly construed claims are compared to the allegedly infringing product. *See id.* Claim construction is a matter of law, in the first instance for the trial court, and is a matter which we independently review, *see id.*, while infringement is a matter of fact which we review accordingly. *See Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 692, 48 USPQ2d 1610, 1614 (Fed.Cir.1998).

■ Determining the claimed function and the corresponding structure for a claim limitation written in means-plus-function format are both matters of claim construction. They, therefore, present issues of law that we review independently. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308, 46 USPQ2d 1752, 1755–56 (Fed.Cir. 1998).

■ This case turns upon the claim interpretation of clauses written in means-plus-function format. This format is allowable under 35 U.S.C. § 112, ¶ 6, which reads:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

In the written description, there are two structures described that correspond to the functions of "injecting air into the waste water" and "aerating the liquid." One is the prior art, rigid-conduit, aeration system detailed at column 1, lines 54–62:

In waste water treatment plants of this type, air is pumped into the aeration chamber through conduits that extend downwardly to a point adjacent the bottom of the chamber so that the air, as it rises, will pass through most of the liquid in the chamber. Air is usually supplied through plastic pipe, such as PVC pipe, having fine bubble diffusers attached at the lower end. The upper end of each pipe is connected to a source of air under pressure.

The other corresponding structure to the functions of "injecting air into the waste water" and "aerating the liquid" is the new, flexible-hose system described in detail at column 2, line 60–62.

Positioned in [the rigid] conduits **32** are flexible-hoses **38** through which air is supplied to diffusers **40** connected to the end of the flexible-hoses.

It is not disputed that both corresponding structures are adequately described in the written description. The only issue in dispute is whether, for purposes of claim construction, both structures should be considered corresponding structures for the disputed means-plus-function language.

■ In construing the disputed claim limitations, it must be kept in mind that the claims at issue in this case are combination claims. Combination claims can consist of new combinations of old elements or combinations of new and old elements. *See Intel Corp. v. U.S. Int'l Trade Comm.*, 946 F.2d 821, 842, 20 USPQ2d 1161, 1179 (Fed.Cir.1991); *Panduit Corp. v. Dennison Mfg.*, 810 F.2d 1561, 1575, 1 USPQ2d 1593, 1603 (Fed.Cir. 1987). Because old elements are part of these combination claims, claim limitations may, and often do, read on the prior art. *See id.*

Clearly, the written description does point out the disadvantages of the rigid-conduit system and the advantages of the flexible-hose system. However, the written description does not require that only the new, flexible-hose system, but not the old, rigid-conduit system, could be used in the claimed wastewater treatment plant. It is well established in patent law that a claim may consist of all old elements, such as the rigid-conduit system, for it may be that the combination of the old elements is novel and patentable. Similarly, it is well established that a claim may consist of all old elements and one new element, thereby being patentable. *See id.*

There are certain situations in which a means-plus-function limitation in a combination claim will be construed to cover only new elements. Hydro–Action argued and the district court concluded that this was such a case in which claim limitations could not read on the prior art because the written description taught away from the prior art. In reaching its conclusion, the district court relied on several cases that so hold, but that are distinguishable in

important respects. For instance, the district court and Hydro–Action cited *Signtech v. Vutek*, 174 F.3d 1352, 50 USPQ2d 1372 (Fed.Cir.1999), in support of the view that the prior art, rigid-conduit system could not be construed to be included in the scope of the means clauses. In *Signtech*, a specific prior art structure was described in the written description as "incapable" of performing the function of the means-plus-function element. Thus, the claim was construed so that it did not cover that specific prior art structure. However, the *Signtech* court noted that the claim could indeed cover alternative embodiments described in the written description, just not the particular prior art structure that was "incapable" of performing the appropriate function.

In the case at hand, nothing in the written description indicates that the rigid-conduit system cannot perform the functions of "injecting air" or "aerating." In fact, the written description explains that the rigid-conduit system is the typical manner in which "injecting air" or "aerating" is accomplished. Thus, *Signtech* does not support a reading that the disputed means-plus-function clause necessarily excludes prior art since the prior art was described as being capable of performing the function of the means-plus-function limitation.

Similarly, another case upon which the district court and Hydro–Action rely, *Sofamor Danek v. DePuy–Motech*, 74 F.3d 1216, 37 USPQ2d 1529 (Fed.Cir.1996), does not support that the disputed means limitations do not cover the prior art, rigid-conduit structure. In *Sofamor*, the means-plus-function element was the only new element in the claim for a non-novel combination. Because the combination was not novel and none of the other elements of the claim were novel, it was proper for the claim to be construed such that the means-plus-function element covered only the novel corresponding structure in the written description.

In contrast, in the case at hand, the means-plus-function elements for the aer-

ating system are not the only points of novelty. The new filtering system is also novel. In fact, all the asserted claims contain an element covering the new filtering system. Essentially, when read in their entirety, claims 1 and 4 cover a wastewater treatment plant that has a new filtering system and that may or may not have the new, flexible-hose system. Thus, it was error for the district court to conclude that the means limitations for the aerating system could only cover new elements of the preferred embodiment. *See Micro Chemical, Inc. v. Great Plains*, 194 F.3d 1250, 52 USPQ2d 1258 (Fed.Cir.1999) (holding district court erroneously overlooked alternative embodiments of the invention when it concluded that the means-plus function clause could only cover the structure of the preferred embodiment).

Other cases cited by the district court and Hydro–Action are inapposite because they deal almost exclusively with the doctrine of equivalents, not with means-plus-function equivalency. In summary, the cases cited by Hydro–Action to support a limited reading of the means-plus-function claim are either distinguishable or inapposite.

■ In addition to the general rule that combination claims can consist of combinations of old elements as well as new elements, the doctrine of claim differentiation also supports Clearstream's position that the means-plus-function elements should be read broadly to cover prior art. Under the doctrine of claim differentiation, it is presumed that different words used in different claims result in a difference in meaning and scope for each of the claims. This doctrine cannot be used to make a claim broader than what is contained in the written description, *see Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538, 19 USPQ2d 1367, 1371 (Fed.Cir.1991), but it prevents the narrowing of broad claims by reading into them the limitations of narrower claims. While claim 4 does not specify what type of aerating system is to be used, claim 5, which is dependent on

claim 4, specifies that flexible-hoses be used inside the rigid-conduits. Under the doctrine of claim differentiation, the flexible-tube limitation of claim 5 should not be read into claim 4.

Further, the prosecution history supports Clearstream's argument that the means-plus-function language in claims 1 and 4 encompasses the prior art rigid-conduit system as well as the new flexible-hose system. The communications between the patent attorney and the PTO indicate that the point of novelty for claims 1 and 4 was the new filtering system. Thus, the prosecution history supports reading the means-plus-function terms for the aerating system in claims 1 and 4 as being capable of covering the old, rigid-conduit system as well as the new, flexible-hose system.

## CONCLUSION

Because the claim construction of the disputed claims of the '470 patent was erroneous, the district court erred in granting summary judgment of non-infringement in favor of Hydro–Action. Accordingly, we vacate the grant of summary judgment of non-infringement and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED.*

## COSTS

No costs.