**DISPLAY TECHNOLOGIES, INC.,**
Plaintiff–Appellant,

v.

**PAUL FLUM IDEAS, INC.,**
Defendant–Appellee.

No. 01–1069.

United States Court of Appeals,
Federal Circuit.

DECIDED: March 4, 2002.

Before MAYER, Chief Judge, LOURIE, and SCHALL, Circuit Judges.

## DECISION

SCHALL, Circuit Judge.

Display Technologies, Inc. ("Display") sued Paul Flum Ideas, Inc. ("Flum") in the United States District Court for the Southern District of New York for infringement of United States Patent No. 5,646,176 (the '176 patent), which is assigned to Display. In its suit against Flum, Display asserted claims 1–4, 7–11, 14–17, and 21–26 of that patent.

In two separate decisions, the district court granted summary judgment of invalidity and noninfringement in favor of Flum. In its first decision, in December of 1999, the court ruled that claim 1 of the '176 patent was invalid by reason of anticipation and that claims 21–26 were not infringed. *Display Techs., Inc. v. Paul Flum Ideas, Inc.*, 75 F.Supp.2d 283 (S.D.N.Y.1999) ("*Display I*"). In its second decision, the district court ruled that claims 2–4, 7–11, and 17 of the '176 patent

were invalid by reason of either anticipation (claims 4 and 10) or obviousness (claims 2, 3, 7–9, 11, and 17) and that claims 14–16 were not infringed. *Display Techs., Inc. v. Paul Flum Ideas, Inc.*, 2000 WL 1449871 (S.D.N.Y. Sept., 27 2000) ("*Display II*"). Thereafter, the district court entered final judgment dismissing Display's complaint.

Display now appeals from the judgment entered in favor of Flum. As explained below, the only point on which we disagree with the district court's careful and thorough analysis is its ruling of obviousness with respect to claims 2 and 3 of the '176 patent. We conclude that because there are genuine issues of material fact with respect to secondary considerations of nonobviousness relating to those claims, summary judgment was not appropriate. Accordingly, we *affirm-in-part, vacate-in-part,* and *remand.*

## DISCUSSION

### I.

The '176 patent is directed to a gravity-fed dispenser for upright articles, such as beverage bottles or cans, in a refrigerated display case. As illustrated in Figure 3 of the patent, the invention allows a potential customer to view a substantial portion of a bottle through an aperture 30, which is defined by the bottom of a front member 24, the top of the front of the track 22, upon which the bottle rests, and the front of two sidewalls 20. '176 Patent, col. 6, II. 6–10. The front member is designed to restrict the forward movement of the lead article in the rack. The invention is set forth in independent claim 1 as follows:

FIG. 3

1. A display rack for supporting and displaying upright elongate articles, comprising:

(A) a plurality of elongate channels, each said channel defining:

(i) a pair of laterally spaced upstanding sidewalls,

(ii) a substantial planar article-supporting track connecting said sidewalls at the bottoms thereof, and

(iii) a front member spaced above the track, secured to at least one of said sidewalls, and at least partially bridging said sidewalls; the bottom of said front member, the top of the front of said track, and the front of said sidewalls cooperatively defining an aperture through which an upright sub-

stantial portion of a lead article in said channel may be viewed; and

(B) means securing said channels in side-by-side, longitudinally parallel and transversely adjacent relationship

'176 Patent, col. 10, II.14–31.

Claims 2–4, 7–11, and 14–17 depend from claim 1. Claims 14–16 and 21–26 of the '176 patent[1] present another aspect of the invention that is relevant to this appeal—an adjustable means for attachment of the base of the track to a support shelf 50 below. Figure 6 of the patent depicts this aspect of the invention. It shows a bottle A' resting on a track 22, with sidewalls 20 having several pairs of recesses 70 or other means for receipt of one or more upstanding walls 52 of the support shelf 50. '176 Patent, col. 7, II. 24–67.

1. Claims 21 and 25 are independent claims. Claims 22–24 and 26 depend from them, respectively.

FIG. 6

The language of claim 14 is exemplary:

14. The display rack of claim 1 for use with a supporting tray having at least one of a laterally extending front wall and a laterally extending back wall, wherein said sidewalls are configured and dimensioned to substantially space the bottom of said track above the bottoms of said sidewalls and define a plurality of laterally aligned and laterally spaced bottom opening *pairs of upwardly extending recesses adjacent the front and the back thereof for telescopic receipt therewith of at least one of a tray front wall and a tray back wall,* respectively, whereby the article supporting length of said display rack may exceed the length of a supporting tray.

'176 Patent, col. 11, II. 5–14 (emphasis added).

In its action in the district court, Display alleged that a display rack manufactured by Flum for Pepsi–Cola Company infringed the asserted claims of the '176 patent.

## II.

In its claim construction, the district court determined that the term "aperture," as used in claim 1, refers to a two-dimensional, rectangular space. In reaching that construction, the court rejected Display's argument that the term described "'a three dimensional, semi-cylindrical space.'" *Display I* at 290–91.

Based upon its construction of "aperture," the district court ruled, in its December 1999 decision, that claim 1 of the '176 patent was anticipated by United States Patent No. 2,572,090 to D.D. Allen ("Allen patent") and United States Patent No. 2,218,444 to G.S. Vineyard ("Vineyard patent"). Both patents disclose display racks for arranging upright containers in parallel channels, with an aperture defined by the channel sidewalls, the base of the rack, and the bottom of a front guard rail. The court held that the Allen patent, which was not cited or considered during prosecution of the '176 patent, contained every limitation of claim 1, including an aperture, rectangular in shape, which enabled a view of a substantial portion of the lower quadrant of the lead container in the rack. *Display I* at 291. The district court also held that claim 1 was anticipated by the Vineyard patent. The court determined that the Vineyard patent disclosed all limi-

tations of claim 1, either implicitly or explicitly. *Display I* at 293.

The district court also ruled on the issue of infringement, granting-in-part Flum's motion for summary judgment of noninfringement. The court held that the asserted claims of the '176 patent that required sidewall recesses or means for "telescopic receipt" (claims 14–16 and 21–26) were not infringed by the Flum device. *Display I* at 297. Relying on the patent's written description, the court construed the claim language relating to a "telescoping" action as being limited to the interaction of the recesses with the upstanding wall of the support tray. *Display I* at 296. Based upon that interpretation, the court concluded that the I–Beam structure of the Flum device did not infringe claims of the '176 patent because it did not contain a recess for telescopic receipt of the support shelf or an equivalent thereof. Specifically, the court rejected Display's argument that the "I-beam" structure of the accused Flum device was equivalent to the claimed recesses because it found that the I-beam did not perform the same function—creating a "snug" fit with the shelf upper rod—or work the same way the I-beam did not "telescopically receive" a shelf upper rod. *Display I* at 297.

In its September 2000 decision, the district court ruled that claims 4 and 10 of the '176 patent were invalid as anticipated, and further that claims 2–4, 7–11, and 17 were invalid as obvious. *Display II.*

As noted above claims 2 and 3 of the '176 patent depend from claim 1:

2. The display rack of claim 1 wherein said front member is disposed forwardly of the front of said track.

3. The display rack of claim 2 wherein the front of said member is disposed forwardly of the front of said track by less than the thickness of an article in the channel.

'176 Patent, col. 10, ll. 32–36. The district court held that these claims, disclosing the rack of claim 1 with a front member constructed so as to allow the first container to suspend in part in front of the track, were obvious in light of the Allen and Vineyard patents in combination with United States Patent No. 4,694,966 to Milton Merl ("Merl patent"). *Display II* at *11. Relying on yet another piece of prior art not presented during prosecution, the court concluded that the Merl patent disclosed the additional element of claims 2 and 3 in its own claim 5, which "describes a 'guard railing extending forwardly from said storage compartment.'" *Display II* at *9.[2]

Finally, the district court ruled on summary judgment that Flum's device did not infringe claims 14–16 of the '176 patent, either literally or under the doctrine of equivalents, for the identical reasons that it had earlier held claims 21–26 were not infringed. *Display II* at *18–19.

### III.

■ The first issue we address is Display's challenge to the district court's construction of the claim term "aperture." The term appears in the clause in claim 1 of the '176 patent that recites "an aperture through which an upright substantial portion of a lead article in said channel may be viewed." The district court concluded that "aperture" refers to a two-dimensional, rectangular space and, based on that construction, held that claim 1 was anticipated by the Allen and Vineyard patents.

**2.** On appeal, except to the extent it disputes the district court's construction of the term "aperture," discussed above, Display does not challenge the district court's grant of summary judgment of invalidity with respect to claims 4, 7–11, and 17 of the '176 patent.

Display argues that the district court's claim construction was incorrect and that, under the correct construction of "aperture," the Allen and Vineyard patents do not anticipate claim 1.

Display urges a claim construction which would require the aperture to be three dimensional, revealing the lower front quadrant of the container from both front and side angles. Display defines the term aperture with reference to the written description of the patent, column 6, lines 17–20, where it is stated that "the aperture typically presents *substantially a full quadrant* of the lead article A' for view by the customer." According to the specification, "such a quadrant in the case of a bottle typically extends *the full width* of the bottle and upwardly for about one third to about one half the height of the bottle." '176 Patent, col. 6, II. 21–23. Based on this language, Display concludes that any aperture revealing "substantially a full quadrant" must reveal a view of the bottle from both the front and sides (*i.e.*, a three-dimensional view of the full quadrant). Display argues in its brief, therefore, that the Allen and Vineyard patents "cannot reveal 'substantially a full quadrant' of the lead article because the lead article cannot extend beyond the sidewalls of the display rack."

Essentially, Display takes the claim term "aperture," combines it with language in the specification describing an embodiment of the invention as revealing "substantially a full quadrant" comprising "the full width" of the container, and creates a limitation on the relationship between the sidewalls and the lead article to require that the lead article must extend beyond the sidewalls of the display rack. Display argues that "there is little room for dispute that the patentee … was acting as his own lexicographer and that the claim 1 language requiring 'an aperture through which an upright substantial portion of a lead article … may be viewed invites reference to the specification.'"

■ The district court did not err in its claim construction. "The general rule is, of course, that the claims in a term are to be given their ordinary and accustomed meaning." *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 989, 50 USPQ2d 1607, 1610 (Fed.Cir.1999). The ordinary definition of the term "aperture" is "an opening; hole; gap." *Webster's New World Dictionary Third College Edition* 63 (1994). That definition does not indicate either a two dimensional or three dimensional space. Because the ordinary meaning of the term aperture does not resolve the issue before us, it is appropriate to consider the specification. *See Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331–32, 59 USPQ2d 1401, 1407 (Fed.Cir.2001).

The district court based its construction of "aperture" on the following statement in the '176 patent's specification:

The aperture thus formed is preferably *generally rectangular in outline.* . . . Even where the front member is not transparent or not present, the aperture typically presents substantially a full quadrant of the lead article A' for view by a potential customer, the quadrant mentioned being the bottom half of the front half of the article. Such a quadrant in the case of a bottle typically extends the full width of the bottle and upwardly for about one third to about one half the height of the bottle, typically *an area* of about 10 square inches.

'176 Patent, col. 6, II. 10–24 (emphasis added). The court stressed that if the term "aperture" were to refer to a three-dimensional, cylindrical space, there would be a conflict with the language in the specification—quoted above—referring to the aperture being "rectangular in outline"

and having "an area of about 10 square inches." The specification supports the district court's claim construction.

There is, we think, an additional consideration that weighs in favor of the district court's claim construction. As seen above, both claims 2 and 3 of the '176 patent, which depend from claim 1, are directed to a display rack in which the "front member is disposed forwardly of the front of said track." Claims 2 and 3 embody the kind of structure that Display urges is claimed in claim 1 (an aperture that reveals a bottle from both the front and the sides). In view of dependent claims 2 and 3, the district court's claim construction, in addition to being grounded in the specification, has the added virtue of being consistent with the doctrine of claim differentiation. *See Wenger Mfg. v. Coating Mach. Sys.,* 239 F.3d 1225, 1233, 57 USPQ2d 1679, 1685 (Fed.Cir.2001) (stating that claim differentiation "is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two claims"). Because we conclude that the district court did not err in construing the claim term "aperture," we affirm the holding that claim 1 is invalid.

## IV.

As seen above, the district court also held that dependent claims 2–4, 7–11, and 17 were invalid. As far as claims 4, 7–11, and 17 are concerned, the only argument that Display makes on appeal is that the court erred in construing the term "aperture." However, we have sustained the court's construction of that term. Accordingly, the judgment of invalidity relating to claims 4, 7–11, and 17 is affirmed.

The validity of dependent claims 2 and 3 does not, however, turn solely on the construction of the term "aperture." As already seen, claims 2 and 3 disclose the rack described in claim 1, with the additional limitation that the front member is disposed forwardly of the sidewalls to allow the lead article to suspend past the sidewalls. Claim 3, depending from claim 2, adds the further limitation that the distance between the front member and the rack be less than the thickness of an article. The Allen and Vineyard patents do not disclose a rack with a front member which permits a suspended lead article.

The district court correctly determined that the sole distinction between the subject matter of claim 1 and that of claims 2 and 3 is the additional limitation that the front member are forward to allow the lead article to suspend in front of the rack. The court found that the Merl patent disclosed this additional limitation, thereby rendering the claims obvious.

The Merl patent discloses a gravity-fed beverage dispenser that stores cans in a horizontal position. At the base of the dispenser, shown in Figure 9 of the patent, gravity urges the lead item to swivel from a horizontal position to a vertical position. The resulting upright article is supported by a rack below and is held in place by a guardrail 24. It was the view of the district court that this guardrail constitutes a "front member disposed forwardly," as disclosed in claims 2 and 3 of the '176 patent. The district court concluded that this disclosure, when combined with the disclosures of the Allen and Vineyard patents, rendered claims 2 and 3[3] of the '176 patent obvious.

---

3. The Merl patent also discloses a rack which permits the lead article to suspend beyond the rack by less than the full diameter of the bottle. Based upon that disclosure, the district ruled that the Merl patent rendered the additional limitation of claim 3 obvious.

FIG. 9.

Display argues that persons in the field of product design would have no incentive to combine the dispensing portion, including the guard rail, of the Merl patent with the Allen and Vineyard patents. In support of this notion, Display suggests that the Merl guard rail is differentiated from the front member disclosed in the '176 patent because the *Merl* guard rail is intended to promote the swivel action of the dispenser and not for the purpose of allowing an improved view of the lead article. Given this distinction between the two display racks, Display argues that persons skilled in the art would not have been motivated to combine features of the Merl, Allen and Vineyard patents.

The motivation to combine references need not be explicit. *Motorola v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472, 43 USPQ2d 1481, 1489 (Fed.Cir. 1997) ("There is no[ ] requirement that the prior art contain an express suggestion to combine known elements to achieve the claimed invention.") The motivation to combine may come from the "nature of the problem to be solved, leading inventors to look to references related to possible solutions to that problem." *Pro–Mold & Tool*

*Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573, 37 USPQ2d 1626, 1630 (Fed.Cir.1996). In situations where the invention and the prior art are straightforward, motivation to combine may be apparent without more. *See Cable Elec. Prods. v. Genmark, Inc.*, 770 F.2d 1015, 1025, 226 USPQ 881, 886 (Fed.Cir.1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358, 50 USPQ2d 1672, 1672 (Fed.Cir.1999) ("Cable faults the district court for failing to make determinations as to how teachings of the references would be combined to produce the patented invention. Nevertheless, the straightforward quality of the invention and the art involved make the required combination quite apparent."). The district court did not err in combining the prior art references in this case. The Allen, Vineyard, and Merl patents all are within the same field of gravity-fed beverage dispensers. It was not error for the district court to conclude that one skilled in the art would have recognized that the invention of the Merl patent was such that its structure afforded a consumer an expansive view of the lead article in the rack, even though that may not have been the main objective of the invention.

■ Display's final argument with respect to claims 2 and 3 of the '176 patent is that the district court erred in its obviousness analysis because it failed to consider evidence of secondary considerations. *See Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed. Cir.1983) (stating that "evidence arising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness.").

In addressing the issue of secondary considerations, the district court focused on what it viewed as the lack of evidence that a nexus existed between the commercial success of the product and the specific improvements of claims 7–9. The improvement claimed in claims 7–9 is the placement of the front member above the center of mass of the article. However, the court's determination that the commercial success of the display rack could not be attributed to the placement of the front member above the center of inertia is not determinative as to whether commercial success is attributable to the suspension of the lead article beyond the side walls of the rack.

A review of the evidence presented before the district court requires us to conclude that genuine issues of material fact are presented with regard to secondary considerations. Display offered the declarations of Richard Jay, its president, and Roger Burchett, its expert in the field of beverage distribution and a consumer of display racks, in support of its argument that the commercial success of the Display rack was attributable to the increased visibility provided by the forwardly protruding front member described in claims 2 and 3. Mr. Burchett stated in his declaration that the Display device contained a significant improvement over the prior art in that it permitted much greater visibility of the lead article in the rack. Mr. Burchett further stated that the improvement significantly contributed to his desire to purchase the product. At the same time, Mr. Jay stated that the visibility improvement, accomplished with the addition of a forwardly extending front member, was the reason for the commercial success of the Display rack. These declarations create a genuine issue of material fact as to whether the commercial success of the patented product operates to rebut the *prima facie* case of obviousness with respect to claims 2 and 3. Consequently, the court's judgment of invalidity with respect to claims 2 and 3 is vacated. We remand for further proceedings relating to those claims.

## VI.

■ The district court concluded that claims 14–16 and 21–26 of the '176 patent, which require means for "telescopic receipt" of the support tray were not infringed, either literally or under the doctrine of equivalents, by the accused Flum rack. *Display I* at 297; *Display II* at \*19. As noted above, the district court interpreted the terms in claims 14–16 and 21–26 relating to telescopic action as referring to the mechanism by which the shelf support tray is fitted to the dispensing rack. The Court stated:

> Contrary to Display's assertions, the telescopic receipt "feature" is neither (1) "to telescope out or extend out the front bottle in the rack beyond the edge of the shelf"; nor (2) "the ability to extend the rack out to overhang the supporting shelf." ... Rather, as the patent language states, the claimed "vertical telescopic action" is no more than the "engagement" of the "upper rod" of the underlying support rack in a "relatively

snug" fit or "telescopically therein" the recess.

*Display I,* 75 F.Supp.2d at 297 (citation omitted).

Display does not challenge this construction on appeal. Instead, it argues that the Flum device does in fact contain the recesses, or means for telescopic receipt, considered to be a limitation of the claims. In so doing, it relies on four "interruptions" in the sidewall of the Flum device. Display notes that the "bottoms of the sidewalls are straight and continuous, *except* for four interruptions at four different points where the recesses are formed. These recesses can engage the front or back rod members of the underlying support shelf, to achieve multiple positions of the display rack." Display argues that these "interruptions" in the back of the rack, which look like recesses, are capable of functioning as such and that, therefore, the Flum rack literally infringes.

Display's argument fails because it is merely a conclusory assertion. Although Display refers to drawings of the accused device submitted to the court below showing several "interruptions" in the side wall, it points to no evidence that tends to establish that the recesses in the Flum device operate in the way required by the claims of the '176 patent, as construed by the district court. Indeed, Flum points out that the interruptions in the sidewalls of the rack are there to allow the back sections to be easily broken off, and further, that "it is quite unclear whether, given their slanted sides, they would engage a rod or simply slip off it." Brief for Defendant–Respondent at 51. Display has failed to offer any evidence which might suggest that the Flum device serves any other function or is capable of any other function than that suggested by Flum in its brief. Summary judgment of nonin-

fringement is appropriate in circumstances such as this where a plaintiff has failed to offer evidence creating a genuine issue of material fact. *See Novartis Corp. v. Ben Venue Labs. Inc.,* 271 F.3d 1043, 1046, 60 USPQ2D 1836, 1838 (Fed.Cir.2001) ("Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case.") Because no evidence has been offered to suggest that the interruptions of the Flum rack sidewalls can operate as recesses, the district court's judgment of noninfringement of claims 14–16 and 21–26 must be affirmed.

## VII.

For the reasons stated above, we affirm the judgment of invalidity as to claims 1, 4, and 7–11, as well as the judgment of noninfringement as to claims 14–16 and 21–26. However, we vacate the district court's judgment of invalidity at to claims 2 and 3 and remand for further proceedings consistent with this opinion.

No costs.