DISPLAY TECHNOLOGIES,
LLC, Plaintiff,

v.

MECHTRONICS CORPORATON,
Defendant.

No. 02 CIV.9465 NRB.

United States District Court,
S.D. New York.

Aug. 24, 2004.

Daniel Ebenstein, Kenneth M. Bernstein, Amster, Rothstein & Ebenstein, New York City, for Plaintiff.

Carrie A. Hanlon, William J. Speranza, Wiggin & Dana L.L.P., Stamford, CT, for Defendant.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff Display Technologies, LLC brought this suit against defendant Mechtronics Corp., alleging infringement of plaintiff's patent for a beverage display rack. Defendant counterclaimed for judgment declaring that plaintiff's patent is invalid. Now pending is defendant's motion for summary judgment on plaintiff's infringement claims, on which we heard oral argument on July 22, 2004. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

Plaintiff's patent, United States Patent No. 5,645,176 C1 ("the Patent"), dated July 8, 1997, describes a design for displaying and dispensing beverages from a refrigerated display case, consisting of parallel, adjacent channels angled so that gravity propels bottles, in an upright orientation, to the front of the display rack. The Patent reflects certain innovations over the prior art—most significantly, a thin front bar (or "front member") that holds the foremost bottle in place without significantly reducing its visibility and a mechanism for allowing the rack to extend forward close to the refrigerator door (thereby eliminating the dead space in which retailers had been placing suction-cup advertisements that obscured the bottles).

Since its issuance, plaintiff's patent has been significantly narrowed. Several claims in the Patent were invalidated as obvious or anticipated[1] in the *Display*

---

1. A claimed invention is "anticipated" if a single prior art disclosure contained each and every element of that invention. *Lewmar Ma-*

*Technologies, Inc. v. Paul Flum Ideas, Inc.* litigation, *see* 60 Fed.Appx. 787, 2002 WL 32066815 (Fed.Cir.2002). The Patent was also amended in a reexamination certificate issued on November 5, 2002, in which certain claims were canceled and new claims were added and determinated to be patentable. Bernstein Dec. Ex. 2. The Patent's more specific claims survived.

Defendant produces a display system called OmniGlide, which uses detachable dividers and interchangeable front pieces of various sizes to allow retailers to display different-sized bottles on the same shelf. Like plaintiff's design, defendant's design allows the foremost item to be almost completely visible. Plaintiff alleges that Omniglide infringes Claims 2, 3, 16, 25, 29–31, and 33–37 of the Patent.

## DISCUSSION

### I. Standard on Summary Judgment for Noninfringement

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also, e.g., Rothe Dev. Corp. v. United States Dep't of Def.,* 262 F.3d 1306 (Fed.Cir.2001). For the purposes of summary judgment, all factual inferences are resolved in favor of the nonmovant. *Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 555 (Fed.Cir.1994), *cert. denied,* 513 U.S. 1151, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995). Nonetheless, because an accused product must contain *every* element of a patent claim to infringe that claim, a defendant is entitled to summary judgment on infringement of a given claim if it establishes that,

based on undisputed facts, at least *one* element of that claim is missing from the accused product. *Zelinski v. Brunswick Corp.,* 185 F.3d 1311, 1316 (Fed.Cir.1999).

The Federal Circuit has established a two-step analytical approach to determine whether a patent claim has been infringed. *Interactive Gift Express, Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1330 (Fed.Cir. 2001) (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1576 (Fed. Cir.1993)). First, the patent claims that are allegedly infringed must be properly construed to determine their meaning and scope. *Carroll Touch,* 15 F.3d at 1576. Second, these claims, properly construed, must be compared to the accused device or process. *Id.*

### II. Construing Plaintiff's Claimed "Aperture"

A central feature of the Patent, present in all but one of the claims at issue here, is an "aperture" at the front of each channel through which a substantial portion of the foremost bottle can be seen. Defendant argues that none of the claims containing this "aperture" element have been infringed by Omniglide because, unlike plaintiff's design, which is open at the front except for a thin bar ("front member"), Omniglide has a transparent-but-solid frontpiece. Plaintiff argues that Omniglide's transparent frontpiece is an "aperture," in the sense of being a viewing window, and alternatively, that the rectangular cut-out in Omniglide's frontpiece meets the specifications for the aperture described in the Patent. For the reasons set forth below, we agree with defendant, and accordingly award defendant summary judgment on all litigated claims that include the aperture element, *i.e.,* all except Claim 25.

*rine, Inc. v. Barient, Inc.,* 827 F.2d 744, 747 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1007,

108 S.Ct. 702, 98 L.Ed.2d 653 (1988).

## A. Canons of Claim Construction

In order to determine the meaning of the term "aperture" in the Patent, this Court must engage in the process of claim construction established by the Federal Circuit in *Markman v. Westview Instruments, Inc.* and its progeny. 52 F.3d 967 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

■■■ Claim construction is an issue of law for the Court to decide. *See, e.g., Day Int'l, Inc. v. Reeves Bros., Inc.*, 260 F.3d 1343, 1347 (Fed.Cir.2001); *Markman*, 52 F.3d at 979 ("the court has the power and obligation to construe as a matter of law the meaning of language used in a patent claim"). In this regard, the Federal Circuit has laid down several specific rules that this Court is bound to follow. "It is well-settled that ... the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification, and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996).

■■■ The analysis begins, of course, with "the words of the claims themselves." *Id.* The "general rule" of claim construction is that "terms in the claim are to be given their ordinary and customary meaning." *K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362 (Fed.Cir.1999). Moreover, "the ordinary and accustomed meaning of a disputed claim term is presumed to be the correct one," *id.* at 1362–63, and the burden is on the party asserting an extraordinary meaning of a claim to overcome this presumption, *id.* at 1363.[2] Finally, language used in more than one claim must be given a consistent meaning in each claim. *Phonometrics, Inc. v. Northern Telecom, Inc.*, 133 F.3d 1459, 1465 (Fed. Cir.1998).

■■■ There is, nevertheless, one relevant caveat to this "plain-meaning" rule. A patentee is free to "be his own lexicographer and use terms in a manner other than their ordinary meaning." *Vitronics*, 90 F.3d at 1582. If a patentee intends to create a new word or modify the meaning of a term, however, the idiosyncratic definition must be "clearly and deliberately stated in the intrinsic materials——the written description or the prosecution history." *K–2*, 191 F.3d at 1363. *See also In re Paulsen*, 30 F.3d 1475, 1480 (Fed.Cir. 1994) (uncommon definitions used to describe an invention must be stated with "reasonable clarity, deliberateness, and precision ... so as to give one of ordinary skill in the art notice of the change"). "A party wishing to alter the meaning of a clear claim term must overcome the presumption that the ordinary and accustomed meaning is the proper one." *K–2*, 191 F.3d at 1363.

■■■ Next, after looking at the language of the claims themselves, the Court must look to the patent specification as a whole, because patent claims "must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 967; *see also, e.g., Vitronics*, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis.). If, however, the claim language is clear on its face, then the Court's "consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Express*, 256 F.3d at 1331. Finally, the Court may also consider the "prosecution history of the

---

**2.** For the purposes of claim construction, dictionaries are considered intrinsic evidence. *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed.Cir.2002), *cert. denied*, 538 U.S. 1058, 123 S.Ct. 2230, 155 L.Ed.2d 1108 (2003).

patent, if in evidence." *Vitronics,* 90 F.3d at 1582.

■ At this point in the interpretive process, if "analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term[, then] it is improper to rely on extrinsic evidence." *Vitronics,* 90 F.3d at 1583.

## B. The Patent

■ Following the rules laid out above, we now construe the proper meaning of "aperture," as used in the Patent. Most important is the language of Claim 1, which has been invalidated by both the courts and the Patent and Trademark Office, *see supra,* but which remains central to our inquiry because it is the claim from which the presumptively valid claims at issue depend.[3]

Claim 1 claims, *inter alia,*

the bottom of [the] front member, the top of the front of said track [*i.e.,* the floor of the channel], and the front of said sidewalls [*i.e.,* the vertical walls that separate adjacent channels] cooperatively defining an aperture through which an upright substantial portion of a lead article in said channel may be viewed.

Col. 10, ll. 24–31. The most logical interpretation of the term "aperture," as used here, is that it describes the empty space between these components. Not only does this make the most internal sense, but it makes the most sense in light of the fact that the preferred embodiment of the Patent uses transparent material, see Col. 5,

ll. 39–52, in which case, if "aperture" simply meant "viewing window," as plaintiff argues, then the aperture here would not be "defined" by the bottom of the front track or the front of the sidewalls, but rather would extend across the entire front of the rack.

Plaintiff contends that the patent specification suggests a broader definition of "aperture." The specification states that "[e]ven where the front member is not transparent, but assuming that any secondary or auxiliary front wall is *either transparent or not present,* the aperture 30 typically presents substantially a full quadrant of the lead article." Col. 6, ll. 15–19 (emphasis added). Plaintiff reasons that, because this passage uses the word "aperture" to include an embodiment with a transparent solid front wall, the claimed aperture must include such a possibility as well. This argument, however, is unpersuasive.

The plaintiff must overcome the presumption that the ordinary meaning is the one intended by the patent. *See K–2,* 191 F.3d at 1363. The ordinary meaning of the word aperture, and the one that makes the most sense in the context of the claims, is "hole."[4] A word can be redefined either explicitly or implicitly, by its clear and consistent use throughout the specification. *See Id.; Bell Atl. Network Servs., Inc. v. Covad Communs. Group, Inc.,* 262 F.3d 1258, 1273 (Fed.Cir.2001). In this case, however, the specification does not clearly redefine "aperture" to mean "viewing win-

---

**3.** Claims 2, 3, 16, 30, 31, 33 and 34 are refinements of Claim 1, and therefore are read as containing all the elements described in Claim 1. Moreover, Claim 29 (added in the Reexamination Certificate), from which Claims 35–37 depend, describes the aperture in language identical to that in Claim 1.

**4.** Merriam–Webster's Collegiate Dictionary 54 (10th ed.1999) defines aperture as "1: an opening or open space: hole 2a: the opening

in a photographic lens that admits the light b: the diameter of the stop in an optical system that determines the bundle of rays traversing the instrument c: the diameter of the objective lens or mirror of a telescope." It is clear from this definition that the general, default meaning of "aperture" is an open space, and that only when associated with cameras, optics, or telescopes, does "aperture" come to include a transparent, solid surface.

dow." Only once does the specification allow for a transparent auxiliary front wall, and the numerous other references to the term "aperture" define it by its four edges, never mentioning its face. Moreover, as mentioned above, Claim 1 describes an "aperture" bound by the solid front parts, whether they are opaque *or transparent,* which further suggests the conventional meaning. For these reasons, we reject plaintiff's argument that defendant's transparent front member is an "aperture" as described in the Patent.

■ Plaintiff argues alternatively that the cutaway section in OmniGlide, which is undoubtedly an aperture, infringes. This aperture, however, is not "defined by" the two sides or bottom of the track, as specified in Claim 1. Plaintiff suggests that the cutaway aperture is covered by the Patent under the doctrine of "claim differentiation"[5]—that because the invalidated Claim 10 covers the invention devoid of an upstanding lip, the Patent, by negative implication, covers the existence of an upstanding lip. We assume arguendo that an invalidated claim can be the basis for claim differentiation. Even if Claim 1 covers an upstanding lip or wall, it still claims an

"aperture" *defined by* the bottom of the front member, the top of the track, and the front of the sidewalls. The aperture in OmniGlide, by contrast, is not defined by any external structures, but rather is *cut out of* the transparent front piece.

Accordingly, we find that OmniGlide does not contain the aperture element described in Claim 1, and therefore does not infringe related Claims 2, 3, 16, 29–31, or 33–37.

### C. Doctrine of Equivalents

Plaintiff's Opposition argues, for the first time in the history of this litigation, that defendant's design infringes the Patent under the doctrine of equivalents. While we doubt that plaintiff is entitled to raise this argument at such a late stage,[6] we nevertheless address it here.

■ Under the doctrine of equivalents, a structure can infringe an element of a claim, even if it is not identical to the disclosed structure, "if it performs substantially the same function in substantially the same way to obtain the same result." *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 74

---

5. "Claim differentiation" refers to the principle that, when a claim "does not contain a certain limitation and another claim [of the same patent] does, that limitation cannot be read into the former claim in determining either validity or infringement." *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1122 (Fed.Cir.1985) (en banc).

6. It is undisputed that, before plaintiff's March 26, 2004 Opposition (filed more than two months after the close of expert discovery), plaintiff gave no indication that it intended to pursue a doctrine of equivalents argument with respect to the aperture element. To the contrary, plaintiff indicated in its response to defendant's interrogatory that, with respect to the claims containing the aperture element, plaintiff was relying on a theory of literal infringement. (By contrast, plaintiff *did* make clear that, with respect to

other elements made immaterial by our holding, it would be asserting infringement under the doctrine of equivalents.) *See* Def.'s Ex. K.

Expert discovery, including all initial and rebuttal reports and opinions, closed in this case on January 16, 2004, and nowhere in plaintiff's expert reports was the argument raised that Omniglide's front structure was the functional equivalent of the Patent's aperture. Under Fed.R.Civ.P. 26(a)(2)(B), expert reports "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Plaintiff has not offered any argument as to why this sanction should not be applied here.

L.Ed. 147 (1929) (internal quotations omitted). Infringement under the doctrine of equivalents is a question of fact. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609–10, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). However, "[w]hether a claim is infringed under the doctrine of equivalents may be decided on summary judgment if no reasonable jury could determine that the limitation and the element at issue are equivalent. At trial, the patentee bears the ultimate burden of proving equivalence." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed.Cir.1999) (internal citations omitted).

■ Plaintiff offers no evidence that OmniGlide satisfies the tripartite "function, way, result" test. Although the front of OmniGlide achieves the same result as that described in the Patent—it prevents bottles from falling and allows for viewing of the foremost bottle—these effects are not achieved in substantially the same way as described in the Patent. While the invention described in the Patent utilizes a thin front member to hold the bottles without blocking them, OmniGlide achieves this result through a clear plastic front piece. We therefore find that no reasonable jury could find infringement of the front piece through the doctrine of equivalents.

### III. Construing Plaintiff's Claimed "Means Securing"

In light of our holding above, the only remaining claim, for purposes of this litigation, is Claim 25, which does not refer to the aperture. Defendant moves for summary judgment on this claim as well, arguing that OmniGlide lacks the "means securing" element contained in Claim 25.

#### A. "Means Plus Function" Claims

■ A "means plus function" element of a claim describes what that element does, rather than what its structure is, and is allowed under 35 U.S.C. § 112. "An element in a claim . . . may be expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof." *Id.* In the context of patent litigation, however, in order for an accused device to meet a means-plus-function claim limitation, the accused device "must (1) perform the identical function recited in the means limitation and (2) perform that function using the structure disclosed in the specification or an equivalent structure." *Carroll Touch*, 15 F.3d at 1578.

The means element of a means-plus-function claim "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6. "[O]ne is still subject to the requirement that a claim particularly point out and distinctly claim the invention. Therefore, if one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language." *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir.1994) (internal quotations omitted).

■ A structure disclosed in the specification of a patent only corresponds to the means "if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *B. Braun Medical, Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed.Cir.1997). While the structures disclosed in the specification need not be the best mode of carrying out the means, a structure that is specifically described as being incapable of performing the recited function has been disclaimed. *See Signtech USA, Ltd. v. Vutek, Inc.*, 174 F.3d 1352, 1357 (Fed.Cir. 1999) ("[B]y stating that the accused structure was 'incapable' of achieving the desired results of the invention, the patentee expressly excluded it as an equivalent of the disclosed structure."); *Clearstream*

*Wastewater Sys., Inc. v. Hydro–Action, Inc.*, 206 F.3d 1440, 1445–46 (Fed.Cir.2000) (holding that, even though the written description points out the disadvantages of an old system and the advantages of a new system, the claim still covers the old system as a corresponding structure).

**B. Plaintiff's Means–Plus–Function Claim**

 The Patent claims a "means securing said channels in side-by-side, longitudinally parallel and transversely adjacent relationship." *See, e.g.*, Col. 12, ll. 48–50. Plaintiff contends that the "Background of the Invention" section of the Patent properly describes dovetail connectors as a structure corresponding to the "means securing" element of Claim 25, and therefore that dovetail connectors are covered by the Patent.

> Modules have also been combined without the use of clips to various horizontal or vertically expending [sic] dovetail key/keyhole connectors, and the like. Such connectors have been known to create problems for the molders, or result in weak or loose connections, or to be difficult to assemble. Accordingly, the need remains for means for releasably securing modules together which do not create problems for molders and result in a tight and secure connection via a simple assembly process.

Col. 2, ll. 58–67. Defendant contends that, while the "Background of the Invention" section mentions that dovetail connectors have been used for similar purposes in the past, the Patent explicitly disclaims dovetail connectors for this invention in the section entitled "Detailed Description of the Preferred Embodiment."

> The securing means 14 of the present invention enables a releasable locking system to provide a tight and secure relationship between the two channels 12A and 12B. The securing means 14 accomplishes this by means which produces *as tight* a joint *as* a dovetail arrangement, *yet does not require the precision crafting of the dovetail arrangement.*

Col. 9, ll. 30–36 (emphasis added). While the patent specification does not state that the structure is incapable of being held together with dovetail connectors, it does describe the connectors as prior art upon which it seeks to improve. The Patent's only other mention of the possibility of dovetail connectors is in the background section quoted above, where it sets out the inventor's intention to solve the problem of weak or loose connections caused by dovetail connectors.

Plaintiff seeks support for its position from the Federal Circuit's decision in *Clearstream*, 206 F.3d at 1445–46. The court in *Clearstream* pointed out that merely teaching away from prior art structures is not enough to disclaim that prior art as a means in a "means plus function" claim.[7] *Clearstream* does not, however, stand for the proposition that structures are claimed when they are "in no way described as part of any embodiment of the claimed invention." *See NCR Corp. v. Palm, Inc.*, 217 F.Supp.2d 491, 517 (D.Del. 2002).

7. Plaintiff also relies on *ADC Telecommunications, Inc. v. Thomas & Betts Corp.*, 170 F.Supp.2d 879, 886 (D.Minn.2001) ("First, the prior art 'means of supporting'—solid disks—is described in the background of the '968 patent, and, while noting the disadvantages of the solid disks, the patent specification does not suggest that the solid disks are incapable of supporting the conducting means"). In that case, however, the structure at issue (solid disks) is actually included in the description of the preferred embodiment of the invention rather than the background of the invention, distinguishing it from plaintiff's patent.

Moreover, the facts in *Clearstream* were somewhat unique, which raises questions about the scope of that holding. Specifically, the prior art at issue in *Clearstream* was described in the plaintiff's patent in intricate detail, which supported the court's inference that this prior art was an embodiment of the claimed invention. Here, by contrast, the Patent merely mentions dovetail connectors in passing and contains no description of the mechanics of these connectors.

At least one other court has dismissed an infringement suit in circumstances like the ones presented here. In *NCR Corp. v. Palm, Inc.*, 217 F.Supp.2d 491, a patent infringement action against producers of handheld personal digital assistant devices, defendants used a mechanical electrical connector to connect two terminals. *See id.* The specification of the patent at issue contained the following statement: "The communications ... are carried out by an optical coupling. This connection reduces noise, eliminates the precise tolerances necessary when using mechanical electrical connectors, and minimizes the electrical power consumption." *Id.* at 516. The court concluded that "[m]ere mention of mechanical electrical connectors as an example of illustrating the superiority of the particular optical coupling mechanism described in the specification cannot sweep such structures into the claimed invention, where the specification makes clear that the inventors did not intend to envelop such structures within the claim." *Id.*

Here, as in *NCR*, the Patent specifically disclaims a dovetail structure as an acceptable means. As defendant points out, "[i]t is logically and physically impossible for a dovetail joint to 'produce[ ] as tight a joint as a dovetail arrangement, yet [ ] not require the precision crafting of the dovetail arrangement.'" Rep. Mem. at 8. This

case also resembles *NCR* in that "[t]he only mention of" dovetail structures "is to distinguish them and contrast them to" plaintiff's invention, *id.* at 517–18. We agree with the *NCR* court that, in such situations, to construe a patent as covering a structure that has been so clearly distinguished from the claimed invention would be an unwarranted and inappropriate extension of the patent.[8]

For the reasons set forth above, we find that OmniGlide does not infringe Claim 25 of the Patent because it does not use a means covered by the Patent for securing the channels together.

### C. Common Floor or Track

Plaintiff argues that the Patent also discloses a "common floor or track" as a corresponding structure for the "means securing" element, and that OmniGlide uses this means, thus infringing the Patent. We find this argument illogical. A common floor or track with separations between channels is one way of designing a display rack, and another, distinct, design utilizes individual modules that need to be secured together. While the Patent employs both designs, the common floor cannot correspond to a method for securing separate modules together. According to the Patent, "it is desirable to have a modular display rack typically consisting of a five or six channel wide main module, a double width module having two channels side by side, and a single width module having only a single channel." Col. 2, ll. 46–50. If the common floor or track were a "means securing," the invention would no longer be modular, destroying the versatility of the invention. Reading the Patent as a whole, we find that the "means securing" refers specifically to a method of joining separate modules to-

---

**8.** Plaintiff makes no argument that dovetail connectors should be included as an equiva-

lent structure under the doctrine of equivalents.

gether, not a method of creating one large module.

## CONCLUSION

Because every litigated claim of plaintiff's patent contains either the "aperture" element or the "means securing" element, and because, for the reasons set forth above, defendant's OmniGlide does not infringe either of those two elements, defendant's motion for summary judgment on noninfringement of the Patent is granted.

**IT IS SO ORDERED.**